UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Wayne Manders,

Plaintiff,

vs.

United States Postal Service,
William J. Henderson, and
Brian Egersdorf,

Defendants.

Civil Filing No.: 00-226 JRT/FLN

**REPORT AND RECOMMENDATION**

---

Wayne Manders, pro se.
Lonnie F. Bryan, Assistant United States Attorney, for Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 9, 2000, on Defendants' Motion to Substitute the United States for Defendants [#11] and Defendants' Motion to Dismiss with Prejudice [#14].

## I. BACKGROUND

Plaintiff Wayne Manders ("Manders") alleges that Defendant Brian Egersdorf ("Egersdorf") defamed him by intentionally including false and malicious statements in the documentation needed to refer Plaintiff for a Fitness for Duty Examination. See Amended Complaint at 1 [#4]. Plaintiff alleges that Defendant forwarded "unsubstantiated second hand information based on rumor and hearsay that [Plaintiff] ran drugs for money, and [had] connections to Hells Angels, a gang of motorcycle riders with a reputation for violent criminal behavior." Id. at 1-2. Plaintiff further alleges that Egersdorf's "publications have damaged



FILED SEP 25 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

[Plaintiff's] good reputation with the Postal Service and [his] coworkers" and convey an unjust and unfavorable impression of Plaintiff's character. Id. at 2. Plaintiff seeks three hundred thousand dollars in compensatory damages and five million dollars in punitive damages. Id. Plaintiff has also named the United States Postal Service ("USPS") and Postmaster General William J. Henderson ("Henderson") in the suit. Id.

Egersdorf does not deny forwarding the information alleged by Plaintiff. See Answer. Instead, he argues that in doing so he was acting within the scope of his employment and is thus entitled to be replaced as Defendant by the United States. See Memorandum in Support of Motion to Substitute the United States.

On May 23, 2000, the Acting United States Attorney for the District of Minnesota certified pursuant to the provisions of 28 U.S.C. 2679 and the authority vested in him by 28 C.F.R. § 15.3(a) that Egersdorf acted within the scope of his employment as an employee of the United States at the time of the incident. See Exhibit 1 to the Memorandum in Support of Motion to Substitute the United States.

At no point did Plaintiff file a tort claim in the Northland District of the USPS. See Exhibit 2 to the Memorandum in Support of Motion to Dismiss.

## II. ANALYSIS

### A. Defendants' Motion to Substitute the United States for Defendants [#11]

#### 1. The United States Should Be Substituted for Henderson and the USPS

Plaintiff has named the USPS and Postmaster General William J. Henderson ("Henderson") as Defendants. The record lacks any allegation, however, that Henderson took any personal action with respect to Plaintiff. The law is clear that suits against individual

defendants in their official capacity are to be treated as suits against the enti y employing the Defendant. Buford v. Runyon, 160 F.3d 1199, 1201, n. 3 (8th Cir. 1998), ci ing Kentucky v. Graham, 473 U.S. 159, 166, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985). While unable to take advantage of the protection afforded to individual defendants, the USPS is not subject to a suit for damages except as an agency of the United States. See 28 U.S.C. § 267 . Accordingly, the United States should be substituted as Defendant for the USPS and Postmas er General Henderson.

**2. The United States Should Be Substituted for Egersdorf**

Defendant also moves to substitute the United States as Defendant f r Egersdorf. The outcome of this portion of the Motion is controlled by 28 U.S.C. § 2679(b)( ), which provides that:

> The remedy against the United States provided by [the Federal Tort Claims Act] for injury...arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any ot er civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

This section effectively grants government employees absolute immunity so long as they act within the scope of their employment at the time of the allegedly defamatory act.

The first step in determining whether a Government employee acted within the scope of his or her employment is for the United States Attorney to determine wheth r it is appropriate to issue a certification under 28 U.S.C. § 2679(c), (d). If issued, the certificati n sets forth the United States Attorney's opinion that the employee was acting within the scope of his or her

employment. In this case, the United States Attorney for the District of Minnesota has issued such a certification. See Exhibit 1 in Support of Defendant's Motion to Substitute. The certification establishes a prima facie case that the defendant government employee was acting within the scope of his or her employment at the time of the allegedly wrongful act. Martinez v. Lamagno, 515 U.S. 417, 436 (1995).

Once a prima facie case is established, the burden of proof shifts to Plaintiff to present specific facts rebutting the government's assertion that the named defendant was acting within the scope of his or her employment. Armstrong v. Brown, 949 F.2d 1007, 1012 (8th Cir. 1991); McAdams v. Reno, 866 F.Supp. 425 (D. Minn.), aff'd 64 F.3d 1137 (8th Cir. 1995); Michaels v. United States, 815 F.Supp. 1244 (S.D. Iowa 1993); Davis v. United States, 791 F.Supp. 793 (E.D. Mo. 1992). If a plaintiff fails to come forward with evidence rebutting the presumption created by the certification, the United States is substituted as Defendant and the case against the federal employee is dismissed with prejudice. See Armstrong, 949 F.2d at 1012, n. 8 (pleading in the alternative inadequate to prevent substitution and dismissal).

After the plaintiff satisfies the initial burden of production, he or she still retains the burden to establish by a preponderance of the evidence that the individual defendant employee was not acting within the scope of his or her employment. Id.; Martinez v. DEA, 111 F.3d 1148, 1153 (4th Cir. 1997). State law, in this case Minnesota law, applies to define scope of employment. Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996).

Minnesota's scope of employment definition provides that: "in cases asserting intentional torts, an employee acts within the scope of his employment when 'he is performing services for which he has been employed or while he is doing anything which is reasonably incidental to his

employment.'" McAdams, 64 F.3d at 1145, citing Marston v. Minneapolis Clinic of Psychiatry and Neurology, 329 N.W.2d 306, 312 (Minn. 1982). A three-part test is used to make this determination:

1. Was the employee's conduct substantially within work-related limits of time and place?

2. Was the employee's conduct of a kind authorized by the employer or reasonably related to that employment? and

3. Should the employer have foreseen the employee's conduct given the nature of the employment and the duties relating to it?

Minnesota JIG 30.15. In cases of alleged negligence, a fourth element is added:

4. Was the employee's conduct motivated, in part, by the employee's desire to further the employer's interest?

Id. The resolution of the scope of employment inquiry is an individual one. Edgewater Motels, Inc. v. Gatzke, 277 N.W.2d 11, 15 (Minn. 1979).

In this case, the act of publishing information regarding Plaintiff's supposed drug and gang connections occurred within work-related limits of time and place. Furthermore, it is clear that Egersdorf's actions were of a kind authorized by the employer or reasonably related to that employment, in that he was required to refer Plaintiff for a Fitness for Duty examination. The third element of the Minnesota scope of employment test is satisfied in that, in requiring a supervisor to refer an employee for a Fitness for Duty examination, the USPS should have foreseen that the inclusion of potentially defamatory second-hand information would occur given the nature of the employment and the duties relating to it. Finally, and assuming for the purposes of argument that Plaintiff's defamation claim sounds in negligence, the record is clear that Egersdorf's action was conduct motivated, in part, by the employee's desire to further the

employer's interest. In this case, the interest of the employer was its interest in ensuring that its employees were fit for duty.

The evidence put forward by Plaintiff fails to rebut the presumption created by the United States Attorney's certification. Plaintiff notes that Egersdorf admits that the allegedly defamatory reports were second hand and that Egersdorf "had to pull a lot of strings to get this [the Fitness for Duty examination] set up so quick." See Plaintiff's Response to Defendant's Motion to Dismiss at 2. Even accepted as true, these allegations do not mandate the determination that Egersdorf acted outside the scope of his duty by including second hand reports or scheduling Plaintiff's Fitness for Duty examination on an expedited basis.

Accordingly, as Egersdorf acted within the scope of his employment, the United States should be substituted as Defendant for Egersdorf, and the case against Egersdorf should be dismissed.

**B. Defendants' Motion to Dismiss with Prejudice [#14]**

The first determination that must be made in order to resolve Defendants' Motion to Dismiss is that of jurisdiction. The burden of proving that this Court possesses jurisdiction is on Plaintiff. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990), quoting Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977).

**1. The Postal Reorganization Act Does Not Remove the USPS from the Protection of the Federal Tort Claims Act**

In enacting the Postal Service Reorganization Act, Congress did not repeal 28 U.S.C. § 2680(b), which specifically reserves the USPS' immunity and consent to suit. 39 U.S.C. § 401(1). Like any other federal agency, Congress has made the Postal Service subject to the

Federal Tort Claims Act ("FTCA"). See Sportique Fashions, Inc. v. Sullivan, 597 F.2d 664, 665-66, n. 2 (9th Cir. 1979). As part of the federal government, the USPS has not surrendered its sovereign immunity with respect to claims arising out of libel and slander. See, e.g., McAdams v. Reno, 64 F.3d 1137, 1139 (8th Cir. 1995), citing 28 U.S.C. § 2680(h).

That sovereign immunity has not been waived is shown by 28 U.S.C. § 2680(h), a section of the FTCA which provides that:

> Provisions of this chapter and section 1346(b) of this title shall not apply to –
> ....
> (h) any claim arising out of...libel, slander, misrepresentation, deceit, or interference with contract rights...

The Complaint makes it clear that Plaintiff's claim sounds in defamation and is thus barred from the FTCA. The exception is a matter of federal law and is not dependent upon whether state law would allow recovery under analogous circumstances. United States v. Neustadt, 366 U.S. 696, 705-06, 81 S.Ct. 1294, 1299-1300 (1961). It deprives courts of jurisdiction over tort claims against the United States where plaintiffs rely on governmental misinformation or failure to communicate correct information. Neustad, 366 U.S. at 705-11 (1961); Block v. Neal, 460 U.S. 289, 297 (1983). Furthermore, the exception encompasses negligent as well as deliberate misrepresentation, and applies equally to affirmative misstatements and negligent omissions. Id. at 702, 704; Green v. United States, 629 F.2d 581, 584 (9th Cir. 1989). In addition, the exception applies where federal employees may be under a specific statutory or regulatory duty to provide the information. Neustadt, 366 U.S. at 710-11; Green, 629 F.2d at 584.

As the United States has expressly retained immunity with respect to defamation claims such as Plaintiff's, this court lacks jurisdiction over the claim. See Bonuchi v. U.S., 827 F.2d

377 (8th Cir. 1987).

Accordingly, the Amended Complaint should be dismissed with prejudice.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Substitute the United States for Defendants [#11] be **GRANTED**;

2. Defendants' Motion to Dismiss with Prejudice [#14] be **GRANTED**.

Dated: Sept 22, 2000

Franklin L. Noel
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.